UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEWITT A. GRANT, II,

     Plaintiff,

v.                            Case No. 8:22-cv-1253-CEH-AAS

THOMAS DIXON, *et al.*,

     Defendants.

_____/

## ORDER

Before the Court is *pro se* Plaintiff Hewitt A. Grant, II's Amended Civil Rights Complaint. (Doc. 36). Under 28 U.S.C. § 1915A, the Court is required to screen the Amended Complaint and dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. After careful review, the Court concludes that the Amended Complaint must be dismissed for failure to state a claim.

## I.   Background

In November 2015, Grant was convicted on state charges of animal fighting or baiting, managing a property used for training animals for fighting, possession of equipment for fighting or baiting, and cruelty to an animal. *Grant v. Sec'y, Dep't of Corr.*, No. 8:19-cv-2954-KKM-SPF, 2023 WL 2561361, at *1 (M.D. Fla. Mar. 17, 2023). In brief, Grant bred dogs for fighting and ran a dogfighting ring in Polk County, Florida. *Id.* at 2-4. After he was convicted at a jury trial, Grant received a total sentence of

1

twenty years' imprisonment. *Id.* at 1. His direct appeal was unsuccessful, as were his efforts to collaterally attack his convictions in state and federal court. *Id.* at 2, 23.

Grant initiated this civil rights action in May 2022. (Doc. 1 at 1). Defendants moved to dismiss the original Complaint for failure to state a claim. (Doc. 28). Before the Court could rule on the motion, Grant sought leave to file an Amended Complaint. (Doc. 33). That request was granted, and the motion to dismiss was denied as moot. (Doc. 35). The Court indicated that it would screen the Amended Complaint before requiring Defendants to file a responsive pleading. (*Id.* at 4).

In the Amended Complaint, Grant alleges that his Fourth Amendment rights were violated during an October 22, 2014, search of his property. (Doc. 36 at 5-7). On that day, Deputies Thomas Dixon, Ricky Anderson, and James Scarborough allegedly "broke through a six-foot privacy fence" and "unlawfully enter[ed]" Grant's property. (*Id.* at 7). The deputies "moved [Grant] off his property" and took his "money, keys, and cell phone." (*Id.*) When Grant tried to return to his property, Deputy Douglas Tanner "restrained" him and took him "across the street." (*Id.*) After Grant gave his consent to search, Deputies Dixon and Anderson began searching the property. (*Id.* at 7, 37).

"[H]ours later," Deputy Scarborough obtained a search warrant for the property using "invalid and fraudulent documents." (*Id.* at 7). The search continued. (*Id.*) Based on the evidence obtained from the property, Deputy Scarborough allegedly "gave Grant multiple [f]ake and [f]raudulent criminal charges" related to dogfighting. (*Id.*)

2

In March 2015, Grant moved to suppress "all the evidence obtained before and after the search warrant."[1] (Doc. 28-1 at 1). He argued that the evidence came from "an illegal search without a warrant" and "an illegal investigatory detention," both of which violated "the Fourth and Fourteenth Amendments to the United States Constitution." (*Id.*) The trial court held a suppression hearing, taking testimony from Grant as well as Deputies Dixon, Anderson, and Scarborough. (Doc. 36 at 36-39). After the hearing, the court entered a written order denying the motion to suppress.[2] (*Id.* at 40). The court held that although "the initial entry into the curtilage" of the property was "illegal," "at no time was there an illegal search of the property or illegal seizure of [Grant]." (*Id.*) The court reasoned that after the initial entry (but before the search), Grant "knowingly and voluntarily provided consent to a search of his property." (*Id.*) Following the denial of his motion to suppress, Grant went to trial and was found guilty as charged. *Grant*, 2023 WL 2561361, at *1. His convictions were affirmed on direct appeal. *Id.*

In the Amended Complaint, Grant separately alleges that his constitutional rights were violated by the entry of an April 2006 injunction "prohibiting him from

---

[1] The Court takes judicial notice of Grant's motion to suppress. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

[2] Grant attached a copy of the order to his Amended Complaint. (Doc. 36 at 36-40). Thus, the Court may consider the order in screening the Amended Complaint. *See K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference.").

possessing or having custody over any animals." (Doc. 36 at 8). Sheriff Grady Judd sought the injunction after Deputy Paul Wright found "emaciated dogs, no food or water, and unhealthy conditions" at Grant's property. (*Id.*) According to Grant, the April 2006 injunction was "defective" because it (1) failed to "describ[e] in reasonable detail the . . . acts restrained," (2) lacked "any specific finding that Grant was unable or unfit to adequately provide for his animals," (3) did not "specify the reason for entry," and (4) charged him an "excessive fine of $38,305." (*Id.* at 8-9). Moreover, law enforcement allegedly used the April 2006 injunction to obtain "probable cause" for the October 2014 search of Grant's property.[3] (*Id.* at 10, 41-42).

Based on these allegations, Grant sues Sheriff Judd as well as Deputies Dixon, Anderson, Tanner, Scarborough, and Wright. (*Id.* at 2-4). He seeks compensatory damages, injunctive relief, and a declaration that Defendants' conduct "violated [his] rights under the constitution and laws of the United States." (*Id.* at 13-14).

## II.    Legal Standard

Under § 1915A, a district court may dismiss the complaint of a prisoner if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A (a)-(b)(1). "The same standards that apply to a dismissal under [Rule] 12(b)(6) apply to dismissals under § 1915A." *Jeffus v. Mahl*, No. 22-12040, 2024 WL 832295, at *1 (11th Cir. Feb. 28, 2024).

---

[3] Grant also claims that (1) in January 2006, a sheriff's deputy "ordered over 60 [of his] animals to be euthanized and killed," and (2) the April 2006 injunction led to 150 "other . . . animals" being taken from him. (Doc. 36 at 9).

4

To survive review under Rule 12(b)(6), a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168-69.

## III.   Discussion

After careful review, the Court concludes that the Amended Complaint must be dismissed. First, Grant is collaterally estopped from challenging the October 2014 search and detention because the state court already rejected his Fourth Amendment

5

claim. Second, Grant's challenge to the April 2006 injunction is untimely under the four-year statute of limitations applicable to 42 U.S.C. § 1983 actions.[4]

### A.      October 2014 Search and Detention

Grant alleges that on October 22, 2014, Deputies Dixon, Anderson, Tanner, and Scarborough violated the Fourth Amendment by searching his property and detaining him. (Doc. 36 at 7-8). According to Grant, the deputies never obtained a valid consent to search, nor did they have a "legal search warrant or probable cause." (*Id.* at 7). As a result of the evidence obtained from his property, Grant was arrested on what he describes as "[f]ake and [f]raudulent criminal charges." (*Id.*)

Grant is collaterally estopped from bringing this claim because it has already been litigated in state court. Collateral estoppel "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1328-29 (11th Cir. 2003). A federal court "must apply the State's law of collateral estoppel under the Full Faith and Credit Clause of the United States Constitution." *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994). "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Quinn*, 330 F.3d at 1329.

---

[4] "The application of an affirmative defense such as . . . collateral estoppel[] and the expiration of the statute of limitations are examples of frivolity that warrant a *sua sponte* dismissal by the court." *Cintron v. Upright*, No. 2:07-cv-7-JES-DNF, 2007 WL 168523, at *1 (M.D. Fla. Jan. 18, 2007); *see also Crenshaw v. Ellis*, No. 2:25-cv-87-WKW, 2026 WL 358292, at *1 (M.D. Ala. Feb. 9, 2026) ("On screening, the court may consider, *sua sponte*, affirmative defenses that are clear from the face of the complaint, [including] collateral estoppel [and] the expiration of the statute of limitations.").

Defendants here were not parties to Grant's criminal case. But in the "criminal-to-civil context," "Florida courts have relaxed the mutuality requirement and approved the use of defensive collateral estoppel by a defendant who was not a party, or in privity with a party, to the prior [criminal case]." *Id.* at 1330-31; *see also Vazquez v. Metro. Dade Cnty.*, 968 F.2d 1101, 1106 (11th Cir. 1992) (noting that Florida law "allows generally for defensive uses of collateral estoppel in criminal-to-civil contexts without mutuality of parties").

Grant fully litigated his Fourth Amendment claim in his state criminal case and lost. With the assistance of counsel, he moved to suppress "all the evidence obtained before and after the search warrant." (Doc. 28-1 at 1). In support, Grant argued that the deputies violated "the Fourth and Fourteenth Amendments to the United States Constitution" by conducting "an illegal search" and "an illegal investigatory detention." (*Id.*) Following an evidentiary hearing, the trial court denied the motion to suppress. (Doc. 36 at 40). The court held that although "the initial entry into the curtilage" of the property was "illegal," "at no time was there an illegal search of the property or illegal seizure of [Grant]." (*Id.*) Grant was subsequently convicted at a jury trial, and his convictions were affirmed on direct appeal. *Grant*, 2023 WL 2561361, at *1.

Thus, because Grant "had a full and fair opportunity to litigate" the validity of the search and detention in his state criminal case, he is "collaterally estopped from bringing his Fourth Amendment claim." *Wiggins v. Loar*, 760 F. App'x 965, 967-68 (11th Cir. 2019); *see also Lloyd v. Card*, 283 F. App'x 696, 701 (11th Cir. 2008) (holding

that plaintiff "was estopped from litigating his complaints about the search warrant" because he "had a fair opportunity to contest all factual issues in his state [criminal] proceedings"); *Debose v. Morzouck*, No. 1:23-cv-42-AW-HTC, 2023 WL 5352926, at *3 (N.D. Fla. June 20, 2023) ("Because the state court already determined [that defendant] did not violate Plaintiff's constitutional rights when she seized Plaintiff's cell phone, Plaintiff is collaterally estopped from raising those same claims here."), *adopted by* 2023 WL 5352608 (N.D. Fla. Aug. 18, 2023); *Mitchell v. McManus*, No. 8:14-cv-1822-JDW-JSS, 2017 WL 1449698, at *4 (M.D. Fla. Apr. 21, 2017) (holding that plaintiff was "collaterally estopped from re-litigating his search and seizure claim in [a civil] action" because his "motion to suppress was fully litigated" in state criminal case).[5]

## B.   April 2006 Injunction

Grant separately alleges that his constitutional rights were violated by the entry of an April 2006 injunction "prohibiting him from possessing or having custody over any animals." (Doc. 36 at 8). According to Grant, the injunction was "defective" for several reasons, including that it lacked "any specific finding that [he] was unable or unfit to adequately provide for his animals." (*Id.* at 8-9).

---

[5] Grant claims that he "is enslaved against his will . . . in prison violating [the] Thirteenth Amendment." (Doc. 36 at 12). But the Thirteenth Amendment "does not apply when a prisoner is incarcerated under a valid judgment." *Cargill v. United States Dep't of Just.*, No. 2:20-cv-920-AMM-GMB, 2022 WL 5292578, at *3 (N.D. Ala. Aug. 23, 2022), *adopted by* 2022 WL 5246431 (N.D. Ala. Oct. 6, 2022). Grant also alleges that he was subjected to "discrimination" in violation of the Fourteenth Amendment, (Doc. 36 at 11), but his conclusory allegations are insufficient to state an equal protection claim, *see Mack v. City of High Springs*, 486 F. App'x 3, 8 (11th Cir. 2012) ("[Plaintiff] only alleged in a conclusory manner that he was discriminated against because of his race or disability. Such conclusory allegations, however, are not sufficient to properly state a claim.").

This claim is untimely. "[A] plaintiff must commence a § 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999); *see also McGroarty v. Swearingen*, 977 F.3d 1302, 1307 (11th Cir. 2020) (same). "The statute of limitations on a [§] 1983 claim begins to run when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011). Put differently, a § 1983 action "do[es] not accrue until the plaintiff knows or has reason to know that he has been injured." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).

As noted above, the injunction was entered in April 2006. (Doc. 36 at 45). Grant appears to allege that he was not properly served with a copy of the injunction. (*Id.* at 10). But the Amended Complaint makes clear that he knew of the injunction by October 2014 at the latest, when law enforcement cited it as "probable cause" for the search. (*Id.* at 10-11, 41-42). The Court thus assumes, in Grant's favor, that he did not "know[] or ha[ve] reason to know that he [was] injured" by the injunction until October 2014. *Mullinax*, 817 F.2d at 716. With that generous assumption, Grant had until October 2018 to file a § 1983 suit challenging the injunction. He did not bring this action until May 2022—well outside the four-year window. (Doc. 1 at 1). Moreover, Grant does not allege any facts that would support tolling the statute of limitations. *See Joseph v. State Mut. Life Ins. Co. of Am.*, 196 F. App'x 760, 761 (11th Cir. 2006) (affirming dismissal upon screening because, "[i]n the absence of an applicable toll,"

plaintiff's claim was time barred). Therefore, his constitutional challenge to the injunction must be dismissed as untimely.[6]

### C.   Leave to Amend

The Court declines to afford Grant another opportunity to amend his Complaint. "Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Here, however, Grant already amended his Complaint after receiving the initial motion to dismiss. (Docs. 34, 36). Notably, that motion sought dismissal based on collateral estoppel and the statute of limitations—the same issues that require dismissal of the Amended Complaint. (Doc. 28 at 6-11). Moreover, there is no indication that "a more carefully drafted complaint might state a claim." *Woldeab*, 885 F.3d at 1291. Therefore, this action will be dismissed with prejudice. *See Jordan v. Brevard Cnty. Sheriff*, No. 6:23-cv-556-WWB-DCI, 2024 WL 2809302, at \*3 (M.D. Fla. Jan. 24, 2024) (*pro se* amended complaint dismissed with prejudice where plaintiff had "already taken the liberty of amending his claims" in response to "first motion to dismiss"), *adopted by* 2024 WL 2809222 (M.D. Fla. Mar. 5, 2024).

---

[6] It is unclear whether Grant intends to assert a Fourth Amendment claim based solely on the initial entry onto his property (as opposed to the search and detention). Any such claim would be untimely because the entry occurred in October 2014, and Grant did not file suit until May 2022. *See Dixon v. Miami Dade Cnty.*, 307 F. App'x 270, 270 (11th Cir. 2009) (Fourth Amendment claim based on defendant "enter[ing] [plaintiff's] premises without consent or warrant" was untimely because entry took place "more than four years prior to the action"). Likewise, any claim based on the alleged euthanizing of Grant's animals in January 2006 would be untimely by over a decade.

**IV.    Conclusion**

Accordingly, it is hereby **ORDERED** that:

1. Grant's Amended Complaint, (Doc. 36), is **DISMISSED with prejudice** under 28 U.S.C. § 1915A.

2. The Clerk is directed to remove the stay and administrative closure flags from the docket, to enter judgment against Grant, and to **CLOSE** this case.

    **DONE** and **ORDERED** in Tampa, Florida, on April 8, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Hewitt A. Grant, II, pro se
Counsel of Record

11